The next case today is 23-1776 William Reginaldo Rodriguez et al. v. Merrick B. Garland. Will Attorney Weber please come up to the podium and introduce yourself on the record? Good morning panel members. May it please the Court, Attorney Robert Weber on behalf of the petitioners. This petition deals with the denial of an application for withholding of removal by the Board of Immigration Appeals and the Immigration Court. The petitioner centers his appeal on three errors that the immigration judge made. The first issue that the petitioner sees in this appeal is the immigration judge erred in determining that the petitioners had not established a well-founded fear of future persecution. The second issue would be that the immigration judge erred in holding that the petitioners could safely relocate within Brazil. And then finally, the third issue being that the immigration judge erred in finding that the government of Brazil was willing and able to protect the petitioners from future harm. With respect to the first issue, the well-founded fear of future persecution... I'm sorry, before you get to the first issue, are you not appealing the denial of asylum and you're only focusing on the withholding? Your Honor, I misspoke. It is the asylum application. When dealing with the issue of a well-founded fear of persecution, the Supreme Court has found that one can certainly have a well-founded fear of an event happening even when there is less than a 50 percent occurrence taking place. That's INSB Cardozo-Fonseca. The immigration judge in this case, in determining that the petitioners did not have a well-founded fear, said that the court did not find and is unable to discern how the respondents would be singled out individually for persecution by these individuals or groups, i.e., the Gardingo family, who the main petitioner worked for, and the drug dealers who the petitioner's He goes on to say that the court bases this on the fact that none of these groups that the respondents fear ever harmed or threatened the respondents in the past. Then he says, furthermore, there are no type of specific threats that have been made to them if they return to Brazil. What the immigration judge does here is he elevates the percentage chance necessary for well-founded fear to exist. The Supreme Court in Cardozo-Fonseca says that it may be as little as 10 percent. The judge in this case is saying, well, if we don't have threats, if we don't have past harm, then we can't have a well-founded fear of future persecution. That's not what the court says. Counsel, I didn't read the decision that way, and I guess one thing that would be helpful for you to explain is, I think your client testified that he did not have a well-founded fear of future persecution. He'd never spoken or interacted with the drug traffickers, much less received threats from them. I mean, he'd never interacted with them, and the family members said the same thing. So because we're looking at this substantial evidence standard, why was there not substantial evidence for the IJ's finding, given your own client's testimony, that he's never interacted even with these people? That is true that he has said that he did not interact with the drug dealers. He did work for the Gardino family. Let's put the Gardino family to the side, because I understand your claim is based both on the drug traffickers and on the family. So just focusing on the drug traffickers, given that testimony, why is there not substantial evidence for the finding? With respect to the drug traffickers, Mr. Rodriguez, and I'm paraphrasing, testified that his brother-in-law owed a very large debt, and he testified, credibly again, that the drug traffickers were going to get their money back no matter what, and that they would hold the Rodriguez family accountable for the debt. Now, I know that's not a specific threat to the family, but I do believe that that opinion of Mr. Rodriguez or his testimony at the hearing, which again, the immigration court has to take as true because the court did find him to be credible, that does clear that as little as 10% bar for the well-founded fear of future persecution. I think the government argues that your client didn't actually use the phrase that you just used, that the drug  that was paid by your client. Well, I think that it's not a direct quote, but I think it's implied from his overall testimony that in Brazil, the drug traffickers operate with little or no impunity in that they would come after the family in order to collect the debt. But are you asking us to weigh the testimony in making that argument, which again, under the substantial evidence test, is not really the correct legal standard? Your argument is not the only plausible inference that they're going to hold the Rodriguez family responsible. It's not the only plausible inference from what they actually said. So given the substantial evidence test, if the judge's inference was proper, then it's hard to understand why the record doesn't support the finding. Your Honor, I believe that, yes, the only plausible inference you're correct is not that the family would be held accountable. There may be other inferences that the judge could have made. However, when the judge is stating and is holding that, because there were no threats directed at the family, whether it's on the, again, there are two avenues that they've sought asylum, one under the political opinion, one under the particular social group dealing with the drug dealers, the court is dealing with both avenues. And they're saying that because there are no threats, then they can't overcome this bar, which is as little as 10%. It's something, again, less than 50%. The court's saying, well, if we don't have direct threats, then we can't have well-founded fear of persecution. He's even saying if we don't have threats in the past or harm in the past, if it's necessary to prove threats in the past or harm in the past, then we've done away with the well-founded fear of future persecution altogether because the court's dealing with past persecution, which the petitioners didn't have in this case, which is why they need to go forward on the well-founded fear. Can you explain what this specific harm is that your client fears from the Gardino family? So moving to that prong of the claim. Mr. Rodriguez was an employee of the Gardino family. He was a member of an opposition party. The Gardino family, one of the members of the family was arrested for assassinating the mayor. We know the record. What specific harm does your client fear from the family? Well, I think that my client fears that if he were to be returned to Brazil, if the Gardino family is brazen enough to carry out an assassination attempt against the mayor who was elected on the day of his inauguration or when he's to take office, then what's to stop them from harming him if they ever find out that he's a member of that party? Well, there's no evidence in the record that they're assassinating every member of the party. Maybe they took out the one who was directly contrary to their holding power. But they haven't been assassinating anybody that's a member of the party. At least there's no record evidence of that. There is no evidence of that in the record. However, I think when we're talking about a well-founded fear of future persecution, Mr. Rodriguez may have been or is considering the possibility of a possible assassination attempt against him.     Your Honor, if Your Honor is speaking about the country conditions report that was submitted, the report, I don't think it weighs as heavily in favor of the governor, as heavily in favor of the IJ's decision as the government would like to suggest. The report says that Brazil has undergone in 2020 approximately 506 drug-targeted, kind of drug stings, which are I guess we'll call them for lack of a better word, against the drug dealers in certain parts of the country. But what the report says is that the overburdened justice system limited the application of justice. I think the report goes more to the fact that the country is unable to control these groups, which leads to this crime. I mean, you can't say that the justice system limited the application of justice because it was overburdened and said, well, the report says flat out that they're unable to do it because it's overburdened and the application of justice is limited as a result. So I think that although the government points out certain steps that the country of Brazil is taking in order to combat political violence and drug-related violence, I think the report goes more to state that the country can't do that. And that's why Mr. Rodriguez does have a well-founded fear of future persecution, because in Brazil, you know, the murder rate is 27 out of every 100,000. It's one of the most violent countries in the world. And that's what the report says, and that's what I believe it stands for. Attorney Snyder, please introduce yourself on the record. Good morning, Your Honors. May it please the Court. My name is Alana Snyder, and I'm appearing today on behalf of the United States Attorney General. We're asking for the Court to deny the petition for review today. Petitioners concede they did not suffer past persecution, and substantial evidence supports the agency's determination that they failed to establish an objectively reasonable fear of future persecution. The Court need not address the unwilling and unable determination, even though we're prepared to discuss it today. And this is because it is well settled that whereas here petitioners only adduce generalized country condition evidence without any specific connection to petitioners' specific circumstances to that generalized country condition evidence, they failed to show that their fear is objectively reasonable. And I think just sort of getting to what Judge Rickleman just addressed, the petitioners here really don't adduce any specific country condition evidence to show an objective reasonableness of the fear of harm upon return. Petitioners generally cite to an incident in which their brother-in-law, Daniel, who's a convicted narco-trafficker in Brazil, sort of had a vague threat, but this of course goes to the subjective genuineness of petitioners' fear, which of course the government doesn't dispute. The immigration judge clearly found that the petitioners fear and have a subjectively genuine fear, but that is an independent test from the objective reasonableness test. And the petitioners really do not adduce anything other than generalized country conditions evidence in this case to say that their fear is subjectively genuine. And as Judge Thompson pointed out earlier, there is really two plausible inferences or more than one plausible inference from the petitioners' direct testimony in this respect. Petitioners didn't specifically testify that the narco-traffickers told Daniel, the brother-in-law, that they were going to come after the family. They just said, the petitioner said, and this I quote, they told the brother-in-law they were going to receive the debt that he had been, that had sort of been collected when he was arrested by the Brazilian police in Brazil, no matter what. And again, the petitioner is asking this court to draw an inference different from what the immigration judge drew. What about your opposing counsel's argument that really what he's arguing is not about whether the substantial evidence standard was met, but it's a legal question about whether looking at the evidence that's in the record, is it enough to show an objectively reasonable fear of harm, and that's really a legal question rather than a substantial evidence question? What's your view on that? I'm not really sure I take petitioners' point on this. The immigration judge, again, considered the evidence here. There's no evidence that the immigration judge didn't consider the evidence. The immigration judge was very clear. He didn't just rely on past persecution. The immigration judge said, well, we're looking at past persecution. We're looking at the fact that the petitioners haven't ever suffered any threats, any harm. I mean, fortunately, they've never suffered any threats, any harm, and they've also never had any contact with the, specifically with respect to the narco traffickers. As you said, there's two tracks running simultaneously here. With respect to the narco traffickers, there's no indication that the petitioners have ever had any contact with these narco traffickers. There's no even indication that the narco traffickers are even aware that these petitioners even exist. The immigration judge did consider that and also considered the country conditions evidence. With respect to my friend, I don't think this is a legal analysis. I think this is, again, just simply a request to re-weigh the record evidence, which, again, I think is, as Your Honor pointed out before, under the substantial evidence standard of review is inappropriate here. Can you address what I asked the holding counsel about the country conditions? Were they considered correctly? Did they go to the weight of the evidence, the IJ's findings? Yeah, the immigration judge here absolutely considered the country conditions evidence. I think your question was about, with respect to the unwilling and unable determination, where the immigration judge reached the unable and unwilling determination. Again, the government is offering here that the court doesn't even need to get to the unwilling and unable determination because petitioners haven't shown a well-founded fear. This is an independently dispositive basis to this petition for review. Again, the immigration judge did consider the unwilling and unable determination and appropriately weighed the country condition evidence. This court will look at the unwilling and unable determination. Two things, essentially, after Rosales Justo has asked the immigration judge to look at whether the Brazilian authorities can appropriately respond and also have made fruitful efforts in an effort to combat narco-trafficking. It's very clear from the record, not only did the immigration judge consider this, but also that the immigration judge made findings on this. I point your honors to administrative record, page 466, which talks about specific operations that the Brazilian police did. The court need not look any further to the fact that Daniel, who is the narco-trafficker in this case, was specifically arrested by the Brazilian police. There is evidence in this case that he was arrested and indicted a few times by the Brazilian police. We do have specific evidence here that the immigration judge considered that Brazil has made fruitful efforts to bring narco-traffickers to justice. I understand your argument that we can stop after no objectively reasonable fear of future persecution. But if we got to the relocation part of the analysis, what about the argument that's been made that the IG here really didn't analyze all the necessary factors, and when I was looking at that part of the record, I was a little bit concerned about that. For instance, I didn't really see an analysis of social and family ties and how that fit in to potential relocation. Can you respond to that? Sure. Of course, our first argument to that is the court doesn't really need to get to that because we have these two independently dispositive bases here. If the court were to disagree with our analysis on the two independently dispositive bases, then obviously the court would remand because we did not defend on the internal relocation bases. And we would say that the immigration judge did not do the MZMR analysis, as the petitioner pointed out in his brief. There's two analyses that need to be conducted in the internal relocation. There's the ability to internally relocate, and then there's the reasonableness. The immigration judge did the ability but didn't do the reasonableness. But again, not really something the court needs to reach because we have two independently dispositive bases here that are fully supported by substantial evidence. I can see my time is coming to a close. Are there any further questions, Your Honors? I do have one more question with respect to the Gardingo family. It seems to me that the evidence there is a bit different given that the petitioner worked for that family. He testified very clearly that he felt that he couldn't express his political opinion, that if he did, he could be harmed in a variety of ways. Again, if the argument is really is that evidence enough to rise to the level of objectively reasonable fear, if it only needs to be 10 percent, what is your response to that? Is it a closer question? The government doesn't believe it's a closer question. Again, there's no question that petitioner has a subjectively genuine fear based upon the Gardingo family claim. Again, the only evidence petitioner adduced that was outside of his testimony in this respect was his and his wife's affidavit. And again, that's sort of duplicative of testimony. There are some jurisdictions in which petitioners don't even have to testify before the immigration judge. They can just submit their affidavit. So again, wholly duplicative. But even if the court were to just sort of take that as independently corroborative evidence, let's just assume arguendo the court's going to take that as independent evidence, that the whole point of submitting that evidence is to say, hey, I'm similarly situated to the individual that my friend referred to before that was murdered, who was a political opponent, was  So that sort of argument doesn't really square here, because the petitioners are not political opponents. They have admitted that the Gardingo family is not aware of the fact that they are actually, they hold any belief, they've never expressed any political belief. That incident, even according to the female petitioners, affidavit occurred 30 years ago. So that is such a So again, just even taking those affidavits alone, and again, this is the only evidence that the petitioners deduce. There's nothing in the country condition evidence to suggest that political violence occurs by employers against their employees or that they've prevented them from voting. And I'd contra that to other evidence in the record that does suggest that some narco-traffickers actually prevent individuals from voting. So I'd say, while there is some generalized country condition evidence with respect to narco-traffickers, we don't see the same kind of country condition evidence with respect to employers. Was there anything more contemporary about the Gardinos other than the incident 30 years ago? There is one other piece of evidence in the record, and it is just one print-out piece of paper to indicate that there is currently a mayor serving in Matipo, Brazil, who is a Gardingo mayor. But that is not the case. Other than that, Your Honor, no. Nothing more contemporary as far as violence against opposition, political opposition? Not as far as the record is concerned, no. Thank you, Your Honors. Thank you, Counsel. Two minutes for rebuttal. Mr. Weber. And please re-identify yourself for the record. You have two minutes. Robert Weber on behalf of the petitioners. I would just go back to briefly the unable or unwilling to control factor. It's unable or unwilling. It's not both. The country conditions reports, to the extent that they establish that the Brazilian government has made an effort, has made some arrests, that they arrested the brother-in-law of the petitioner in this case. That goes to the country's willingness to prosecute these individuals and the willingness of the justice system to take action. However, what we're dealing with is the other side, whether or not they're able to do it, and they're just not able to do it. The country conditions, the immigration court doesn't make reference to that sentence that I quoted earlier in his decision, but the government makes reference to that sentence in its own brief. Frankly, the justice system is overburdened, and therefore there's limited justice. And that goes right to the unable factor. It is true that the evidence doesn't have any more recent evidence of persecution against members of the opposition party. However, when they were in Brazil, this is what happened. The mayor-elect was killed, and Mr. Rodriguez fears that he'll have similar fate if he returns, especially now that it's out in the open, as to his opposition to the Gardingo family, and the fact that there's a Gardingo family member in politics. They've taken the step from business right into politics at this point, and I think that that goes to his well-founded fear of future The court is adjourned until 2pm today. Thank you very much.